I think we're on Wilson. Is that right? Okay. 23-2073 U.S. v. Wilson. Good morning, Your Honors. Good morning. Thank you. May it please the Court, my name is Brian Grayson. I'm appearing on behalf of Appellant Dr. Rick Wilson this morning. Your Honors, I'm respectfully going to ask the Court to find me two minutes in rebuttal this morning if it's okay. Well, you see how that works, I think. I've watched the other hearings. I've noticed that the administrative subpoenas aren't as exciting as the other matters. I'll try to make it as unexciting as possible. I think the Court would appreciate that. Your Honors, this case arises from an overly broad administrative subpoena issued on my client, Dr. Rick Wilson. This is really, for lack of a better term, the classic phishing. Well, let's get to the no. It was overbroad to start with. The judge thought that narrowed it. How would you narrow it further to make it reasonable? Well, can I back up for a minute just to see? Because if I give you procedural history, you'll understand why we're here, I think. The Court originally, the government filed a petition and served it on Dr. Wilson. Dr. Wilson lives in California, took a little time, had to call a few lawyers, finally found me. And in the meantime, the government filed not only, they filed a motion for default judgment as well. I got that vacated. It was a court's entry for default, which it got vacated. I filed a motion to vacate that. In addition, they filed a petition for enforcement. I opposed that petition, filed an answer, of course, to the petition, and then filed a motion to dismiss. It was granted as overly broad. Now, what happened was the government came back and they filed a motion for reconsideration under Rule 59, and in the alternative, under Rule 15, a motion to amend the petition. Now, it was interesting. When I filed a response to the Rule 59 motion for reconsideration, I pointed out that the government didn't address one factor required under Rule 59 to grant reconsideration, and the government didn't even address it on reply. They basically just didn't even try to justify the original filing of their motion. If it was a civil case, I would have followed Rule 11 on them, frankly. But it's not. Obviously, it's the case of the government. So, but the amendment petition was granted. Now, this is where it gets really interesting to me and unique. Now, I'll be honest with you, I do mostly civil practice. This is rare for me. The doctor found me through another case I had actually gotten myself involved in on federal court and felt I was qualified to represent him. What they did was they filed the amended petition, and the district court not only grants the amended petition, so you would figure because Rule 15 is being invoked, the petition would be filed. Then I would file an answer, and then I would file my arguments. What the district court here did was kind of surprising to me. What it did was it turned around and it not only said it granted, it said the admission is deemed, the petition is deemed filed already. And it's deemed granted almost if, I guess, the parallel here is a judgment on the pleadings, and it's enforced, and Dr. Wilson is ordered to comply with the subpoena. It just went right through everything, didn't give me a chance to comply. So that's not an issue. I mean, you haven't raised the way the district court procedurally handled it as an appellate issue, have you? Not directly, but I did explain it all, and I felt that part of my argument was I had to go right to the over-breath. It was my real first chance to argue this. Now, if you go back, I was actually listening to one of your oral arguments yesterday, and a motion for reconsideration came up. I believe you were asking some of the things. And last night as I was sitting in a hotel across the street, I said to myself, well, they're going to say to me tomorrow, why didn't you file a motion for reconsideration? And I submit to you that Rule 59 motion for reconsideration sounds nice. It's one of those things that sounds nice in a lawyer's conference room, but I've never filed one in my 17 years, because I've watched other people deal with the heft of math and filing a motion for reconsideration. I'm getting confused. Are you making procedural objections to the... It's one of the objections that I'm... Because I'm like Judge Carson. I didn't see that. Oh, I'm just pointing out as well why we are here. Okay. And really you're better off focusing on the merits. I apologize. Okay. I just wanted to make sure the court had a full understanding of how we got here so fast without those things, and I apologize. Now, as we've discussed, the district court originally quashed the subpoena, which it was correct to do. What was the change in the amended petition? Well, the real change was the addition of a declaration of DEA investigator Shirley Scott. I submit to you that that declaration, and it's in the appendix of DNM 81 through 88, just for the record, that the declaration of the DEA investigator, it's really nothing more than a boilerplate, conclusory, and contradictory, as I mentioned in the briefing. Now, administrative subpoenas, as we all know, are really, for lack of a better term, they're an end-around around the Rule 41 warrant process. And the basis to compel production from Dr. Wilson here, what the government did was it used generic wording, magic words, if you will. And the way they present it, it's if you, if the government says these magic words, we get everything we ask for. I've come before you today to ask you to, of course, to quash that subpoena. Now, Your Honor, as well, I'm not waiving any of the written arguments. As you know, I have a limited amount of time, so I have to focus on several of the arguments I deem most important to look at. At this point, can you address Judge Hartz's question, which is, what did the district court do wrong? It pared it down considerably. What more did the district court need to do that would satisfy you? It accepted the, Scott's declaration on its face without giving any due consideration for all of its factors. One of the things that we all know from law school is cross-examination is the greatest legal engine ever devised for discovering the truth. Her affidavit, she said it, it was accepted at face value by the district court, and it was immediately enforced based on that. That was the only difference, I'm arguing substantively, between the original subpoena that the district court found was overbroad and the one that it, the updated subpoena, which And what in the affidavit should be challenged? Okay, Paragraphs 25 through 27, for example. Let me look at this. And you mentioned, you argued this in your brief. Absolutely. In Paragraphs 25 through 27 of the Scott Declaration, she raises the specter, but doesn't say it, but raises the specter. It's like the seriousness of the accusation is what gives us the support, the bootstraps. So 25 through 27, and by the way, if you see me doing this, I have a prosthetic leg, so sometimes I have to move to get my blood flowing, so I apologize. No apology for that. It says, it raises the specter that Dr. Wilson's prescribing practices directly caused the death of 17 patients that the DEA seeks records for. In other words, he prescribed these benzodiazepines and they killed him. That's when they raise the specter, but they don't actually say it. Or she doesn't actually say it. Then right after, Your Honors, the Scott Declaration immediately contradicts itself. As in Paragraphs 28 and 29, Scott declares that the DEA needs the requested records because the DEA has information that Dr. Wilson's patients were not taking the prescribed medication, which suggests that the patients were selling the controlled substance or trading it for drugs. This is the classic cath contract. They took the substance. They died. It's his fault. They didn't take the substance. They died. It's his fault. These are things that were not challenged at the district or could not have been. They immediately did it. So let me ask you about this affidavit issue. Yes. So I'm just wondering, it seems like these kind of subpoenas are always decided if there's any evidence presented on the basis of an affidavit and that there's not testimony, not cross-examination of it. It reminds me like a warrant, you know, a search warrant to go get somebody's records. I mean, those aren't presented an IRS warrant. I mean, they don't stick an IRS agent up on the stand and make them testify before they let them issue an administrative subpoena or they enforce one. Right. That's correct. But I was not given a chance to even look at it. I think the court should look at, I respectfully request that you look at the substance of the affidavit. There is no substance. It uses what I'd like to refer to as scary rhetorical devices and allegations, but it omits material facts that had they been presented to the court, it would have really raised the questionable veracity of the Scott Declaration. For example, Dr. Wilson, he doesn't prescribe opiates. He certainly doesn't prescribe fentanyl or any other types of pain medication. He works for high-risk communities. The Declaration is misleading in that it makes the most serious allegations against Dr. Wilson while it omits crucial information what he does. Anybody who reads this who does not know what Dr. Wilson does thinks that he prescribes the opiates that killed the people that they treated, his other faculties, one of them in there is listed as a heart condition. He doesn't prescribe them. He prescribes benzodiazepines, as I understand it. They were, I'm not a medical doctor, I only play one, and I stated the resident's name and not the holiday and express, please forgive me, but as I understand it, they replaced barbiturates as a safer alternative to barbiturates, benzodiazepines. It doesn't explain this in the Declaration. It's designed to upset the reader. As I mentioned earlier, it's the seriousness of the allegation that supports it. There's no facts under it. And I think unwittingly, the government actually makes my case partially because if you look at some of the pleadings that they file, they highlight the same exact languages that they've used before the district court, other district courts, to say, hey, we use this language in these cases. Zadeh, the Fifth Circuit, accepted this language, so you accept it here. It's boilerplate. While grant, the administrative subpoena, is not subject to the same Fourth Amendment level warrant requirements, subpoena, the warrant's higher and subpoena's lower, it is still subject to the Fourth Amendment. There has to be particularized and specific facts enunciated in the Declaration to support the seeking of these documents. The government just wants to say, we've alleged it, that's enough. Had he surrendered his license by the time of the affidavit? His license is surrendered in New Mexico, yes. As of the time of the affidavit? That's a pretty big admission. No, the affidavit was after. It's public record, there's an agreement of him surrendering his license in, I believe, 2020. You're almost suggesting that he did nothing wrong, and yet he agreed to a suspension of his license, and was the second biggest prescriber in New Mexico, despite living in California. That's a good start. I'm not suggesting anything, sort of suggesting that he should be jealously guarding his Fourth Amendment, Fifth Amendment, and his HIPAA, as you've seen argued, that there's HIPAA involved here as well, but the court agreed with that argument. And when you start looking at it, as much as I had, you start to realize that some of these arguments kind of, in ways, and especially preparing for this argument, that the HIPAA argument and the Fourth Amendment argument, as well as the Fifth Amendment argument, kind of all are intertwined, the second prong of the HIPAA argument that I argued in there. Let me read it to you. The request is specific and limited in scope to the extent reasonably practicable in light of the purpose sought. Now, to answer your question, Judge Phillips, you had talked about, I'm not saying, I'm merely arguing that the government has to do more than just say, oh, he surrendered his license, so he must have done everything else we accuse him of. So, is your position, then, that no subpoena, or that nothing should have been allowed by the district judge? I think it should have been much more supported than just by bold accusations saying, the bold accusations of the declaration, that's what I'm saying, Judge Phillips. Okay. I will reserve the rest of my time if the court allows me to do so. May I, Judge Phillips? Oh, thank you, Your Honor. I wasn't sure if you were nodding in the air or just moving your head. Nodding asleep. This is a nerve-wracking process. Thank you, Your Honor. Mr. Rogers. Thank you, Your Honor. Case in order for the United States. The DEA is conducting an ongoing investigation into whether the respondent violated the Substances Act, and to aid in that investigation, reasonably sought various of respondent's patient records to determine whether his prescribing practices, in fact, violated that statute. The district court reasonably tailored the government's subpoena to provide for a new number of records that would exactly further that investigatory purpose. Respondent here has been unable to articulate how the district court erred, and in fact, the Scott Declaration makes clear that all of the records sought in this case would materially advance the government's investigation. I'll take first respondent's contention that the Scott Declaration is in some way inconsistent. Now, the declaration refers that several of respondent's patients, very soon after they've been prescribed controlled substances, died, and there were toxicology reports suggesting that some of the benzodiazepines that the respondent had prescribed were in their systems. That, at least, suggests that maybe respondent was not properly prescribing benzodiazepines consistent with the Controlled Substances Act requirement that they would be prescribed for a legitimate medical purpose. Then for two other patients who didn't have any of the prescribed benzodiazepines in their system, that, in fact, suggests that respondent was prescribing controlled substances, and those patients were diverting them for illegal uses. And that's why, for example, urinalysis tests would be necessary to determine whether respondent was, in fact, prescribing controlled substances for legitimate medical reasons. All of these patient records here, the district court appropriately recognized, would further those investigatory means. Absent additional questions from my court, we urge that you affirm the district court's enforcement of this. Let me ask you something. You said without urinalysis you couldn't do something. Are you going to get any urinalysis reports through the subpoena? Yes, Your Honor. The district court's opinion specifically states that urinalysis reports for patients in connection with them being prescribed controlled substances should be turned over. But you don't know whether, in fact, there are such reports. Okay. If there are any, you're one of them. And, in fact, the absence of such reports would additionally demonstrate whether respondent was conducting appropriate procedures to determine whether to prescribe those controlled substances. For some of the benzodiazepines, it's necessary to determine that patients are actually taking them, and that I believe that their urinalysis would demonstrate one way or the other. So you flew out here for three minutes? If the court has no further questions, we rest on it. I don't have any questions. Okay. Thank you, counsel. Thank you. I'm not sure there's anything to rebut at this point. I think there is one thing to rebut. Okay. And I won't take up your time. Thank you again, Your Honor, for allowing me to present my case this morning. They had mentioned urinalysis. I do want to make sure that the court does understand this is important, why I have a problem with the Scott Declaration, Judge Phillips, and everything else, and so you want the same argument. Now, for example, in a methadone clinic, which Dr. Wilson doesn't run, there are such mandates to do urinalysis once a month. However, in Dr. Wilson's type of practice, there are no such regulations or mandates. The Scott Declaration, Your Honors, continuates that Dr. Wilson had these requirements and that he could be held criminally liable if his patients didn't take the medications as prescribed. Again, the reader is supposed to keep their attention on the harshness. No one is going to be convicted based on this affidavit. The Declaration was to give enough information to show that it's worth investigating and these particular types of records would be helpful in the investigation. Isn't that the only purpose of the Declaration? It may all turn out to be inaccurate information, but that's the point of the subpoenas, to try to get information. Am I wrong about what the Declaration's purpose is? I guess I could not state otherwise. I guess it's a strange way to say it. I don't think you're wrong about that, but I think the Declaration, as I've noted earlier, has to have some sort of reasonable relation to the Fourth Amendment. It has to meet some Fourth Amendment requirements. It can't be just because the government said so. I think the underpinning of the Fourth Amendment is that the government is immediately suspect, and with the urinalysis thing, I just want to make the last comment. If it can't be held criminally liable for failure to conduct urinalysis, how could an investigation be warranted in the first instance? Thank you. And I thank you for your time today and my first time before you, and I appreciate it. Thank you. You're welcome. Thank you. Case submitted. Counselor excused. Good luck getting back to the East Coast today.